IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL M. COTTRELL,

             Plaintiff,                No. CIV S-07-2574 GEB EFB P

      vs.

R. K. WONG, et al.,

            Defendants.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  Currently under consideration is defendants' motion to dismiss.  Cook, Plainer and Wong move to dismiss on the ground that plaintiff failed to exhaust the available procedural remedies.  All defendants move to dismiss plaintiff's claims for damages in their official capacities.  For the reasons explained, the motion must be granted.[1]

**I.    Facts**

      This action proceeds on the following claims: (1) defendant J. Cook urinated on plaintiff's mattress; (2) defendant R. Plainer refused to replace the soiled mattress; (3) defendant

---

[1]  Defendant Wong also claims that this action should be dismissed with respect to him because plaintiff fails to state a cognizable claim against him.  The court need not reach this ground for dismissal because plaintiff's failure to exhaust is an adequate basis for dismissal.

1

1   Wong knew of a series of events involving J. Cook, but failed to take remedial action, thereby

2   leading to Cook's violating plaintiff's rights by urinating on his mattress; (4) defendant Huston

3   was deliberately indifferent to plaintiff's serious medical needs by denying plaintiff treatment for

4   a stab wound.[2]  Plaintiff alleges that these events occurred at High Desert State Prison

5   ("HDSP").  Plaintiff seeks damages from each defendant in their individual capacities.  Am.

6   Compl., at 4.

7        On September 12, 2007, plaintiff submitted a grievance designated Log No. 07-03134, in

8   which he complained that Cook had urinated on his mattress and that Plainer refused to provide a

9   clean one.  Defs.' Mot. to Dism., Attach. 2, Audette Decl., at ¶ 2; Am. Compl., Ex. A, at

10  unenumerated page 5.[3]  Plaintiff did not name defendant Wong in this appeal.  Neither did he

11  generally refer to a supervisor or anyone else who could have prevented the conduct of Cook and

12  Plainer.  *See Id.*  In response, plaintiff received written notice dated September 12, 2007,

13  informing him that his appeal was sent to be considered on the first level of review.  Am.

14  Compl., Ex. A, at 1.  On September 29, 2007, and October 2, 2007, the sergeant responsible for

15  investigating the matter on the first formal level of review, Sergeant Audette, attempted to

16  interview plaintiff about the grievance.  Audette Decl., at ¶¶ 3, 4;[4]  Defs.' Mot. to Dism., Attach.

17  3, Dangler Decl., Ex. A, at 2.  On both occasions, plaintiff refused to speak to Sergeant Audette.

18  Audette Decl., at ¶¶ 3-4.  Therefore, Sergeant Audette returned the appeal to plaintiff and

19  cancelled it on the ground that plaintiff refused to cooperate in the appeals process.  *Id.*, at ¶ 3.

20  Attached to the cancelled appeal was an Appeals Screening Form explaining that the appeal was

21  cancelled for, "abuse of the appeal process."  Am. Compl., Ex. A, at 2.  The specific reason

22
23       [2]  Huston does not join in defendants' motion.  Therefore, regardless of the disposition of this motion, he must file an answer to the complaint.

24       [3]  Plaintiff's exhibits do not have page numbers.

25       [4]  Sergeant Audette's declaration contains four paragraphs, the last of which is designated
26  as "5" instead of "4."  For the sake of clarity in these findings and recommendations, the court refers to paragraphs 1, 2, 3 and 4.

2

given was plaintiff's "[l]ack of Cooperation: refusal to interview or cooperate with reviewer shall result in cancellation of the appeal, per CCR 3084.4(d)." *Id.*  Prison officials also sent plaintiff a memorandum dated October 9, 2007, noting that plaintiff refused to permit Sergeant Audette to interview him; and, therefore, the appeal was cancelled on the first level of review. Am. Compl., Ex. A, at 3.  The memorandum noted that an inquiry into plaintiff's allegations had been conducted nonetheless, but in light of the confidential nature of personnel matters, the results would not be disclosed to plaintiff.  *Id.*, Ex. A., at 4.  The following concluded the memorandum:

> Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.  If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's level of Review.  Once a decision has been rendered at the director's Level of Review, your administrative remedies will be considered exhausted.

*Id.*  On November 5, 2007, plaintiff appealed to the second level of review, arguing that Sergeant Audette had lied about attempting to interview plaintiff.  *Id.* at 5, 6.  Plaintiff asserted that Audette never attempted to interview plaintiff, and he requested that an "honest correctional lieutenant"[5] be assigned to interview him.  *Id.*  This appeal also was rejected.  *Id.*  There is no evidence that any written explanation of the rejection was given to plaintiff.  On November 11, 2007, plaintiff submitted a written inquiry to the appeals coordinator asking, "when a 602 gets rejected, does that mean 'administrative remedies' are exhausted, or not. [sic]"  *Id.*, Ex. F, at 14. The written response said, "[I]t depends on the reason it was rejected."  *Id.*  The Inmate Appeals Branch ("IAB"), within the California Department of Corrections and Rehabilitations ("CDCR"), which is responsible for processing grievances on the Director's Level of Review has no record that plaintiff submitted a grievance on that level complaining about the conduct of

---

[5] It appears that plaintiff misunderstood Audette's rank as a Correctional Sergeant or perhaps that he was requesting that a higher-ranking officer review the grievance.  This fact does not affect the disposition of this motion.

1  Cook and Plainer.  Defs.' Mot. to Dism., Attach. 4, Grannis Decl., at ¶¶ 1, 3-4, 7.  Plaintiff has

2  not submitted any evidence that he appealed to that level of review.

3       Defendants rely on the declaration of Grannis to demonstrate that plaintiff cannot prove

4  that he exhausted the available administrative remedies.  In her declaration, Grannis states that

5  she searched CDCR records and did not find any grievances alleging that defendant Wong failed

6  to intervene to prevent Plainer and Cook from violating his rights.  Grannis Decl., at ¶ 7.

7  Plaintiff submits no evidence to contest this assertion.

8       On November 15, 2007, plaintiff requested that the Clerk of the Court send him the forms

9  necessary to commence a civil rights action.  Dckt. 3.  Plaintiff filed the initial complaint in this

10  action on December 3, 2007.  Dckt. 1

11  **II.**     **Defendants' Motion to Dismiss for Failure to Exhaust**

12       Defendant Cook, Plainer and Wong move pursuant to Rule 12(b) of the Federal Rules of

13  Civil Procedure to dismiss plaintiff's complaint for failure to exhaust.

14      **A.**     **Standards**

15         **1.**   <u>**Motion to Dismiss for Failure to Exhaust**</u>

16       Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

17  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

18  confined in any jail, prison, or other correctional facility until such administrative remedies as

19  are available are exhausted."  42 U.S.C. § 1997e(a).  This requirement is mandatory and

20  unequivocal.  *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198,

21  1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition

22  to judgment, but it did not.  The actual statute makes exhaustion a precondition to *suit*." (citation

23  omitted)).  A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the

24  conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he

25  submits his complaint to the court.  *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006).

26  Therefore, a prisoner must exhaust available administrative remedies before filing any papers in

1    federal court and is not entitled to a stay of judicial proceedings in order to exhaust.  *Id.* at 1051;

2    *McKinney*, 311 F.3d 1198.

3           The failure to exhaust nonjudicial administrative remedies as required by § 1997e(a) is

4    not jurisdictional.  *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003).  Nor does

5    § 1997e(a) require a plaintiff to plead exhaustion.  *Id.* at 1119.  Rather, "§ 1997e(a) creates a

6    defense – defendants have the burden of raising and proving the absence of exhaustion."  *Id.*

7    The Ninth Circuit determined in *Wyatt* that because the defense of failure to exhaust "is not on

8    the merits" and summary judgment "is on the merits," the defense should be treated as a matter

9    in abatement[6] to be resolved pursuant to a motion made under "unenumerated Rule 12(b)."  *Id.*

10   The Circuit stated that "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial

11   remedies, the court may look beyond the pleadings and decide disputed issues of fact."  *Id.* at

12   1119-20.

13          The United States Supreme Court stated in *Jones v. Bock*, 549 U.S. 199, 216 (2007), that

14   failure to exhaust under the PLRA is an affirmative defense.  It also stated that if the affirmative

15   defense can be decided on the pleadings alone, a motion under Rule 12(b)(6) is appropriate.  *Id.*

16

---

17          [6] A "matter in abatement" is "the suspension or defeat of an action for a reason unrelated
     to the merits of the claim."  *Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005).  It has its
18   roots in the common-law "plea in abatement," abolished by Fed. R. Civ. P. 7(c).  Rule 7
     "unceremoniously abolishes a great deal of ancient procedural dogma that has little place in a
19   streamlined litigation system," Charles Alan Wright & Arthur R. Miller, *Federal Practice and
     Procedure*: Civil 3d § 1181, including pleas in abatement.  *Black's Law Dictionary* 4 (6th ed.
20   1990).  The "plea in abatement" is an archaic common law "plea which, without disputing merits
     of plaintiff's claim, objects to place, mode or time of asserting it.  It allows plaintiff to renew suit
21   in another place or form, or at another time, and does not assume to answer an action on its
     merits, or deny existence of a particular cause of action on which plaintiff relies."  *Black's Law
22   Dictionary* 1151 (6th ed. 1990).  The Advisory Committee Notes to Rule 7(c) state that all
     statutes using the word "plea" are "modified in form by this rule."  Thus, for example, the
23   Revision Notes to 28 U.S.C. § 2105 (West 2006), which prohibits reversal of a District Court's
     ruling on non-jurisdictional "matters in abatement" in the Supreme Court and Circuit Courts of
24   Appeals states, "Rule7(c) of the Federal Rules of Civil Procedure abolished all pleas, and the
     rules adopted the motion as a substitute therefor.  The words 'matters in abatement' were,
25   therefore substituted for the abolished 'plea in abatement' and 'plea to the jurisdiction.'"
     Modernly, a party makes a motion under Rule 12 or Rule 41, as appropriate, instead of making a
26   plea in abatement.  *See Black's Law Dictionary* 4, 1151-1152 (6th ed. 1990) ("abatement of
     action," and "plea in abatement").

at 215.  The Court analogized to a motion to dismiss based on a statute limitations defense and

stated:

> A complaint is subject to dismissal for failure to state a claim if the allegations,
> taken as true, show the plaintiff is not entitled to relief.  If the allegations, for
> example, show that relief is barred by the applicable statute of limitations, the
> complaint is subject to dismissal for failure to state a claim; that does not make
> the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc.
> 8(c).  Whether a particular ground for opposing a claim may be the basis for
> dismissal for failure to state a claim depends on whether the allegations in the
> complaint suffice to establish that ground, not on the nature of the ground in the
> abstract.

*Id.*

But, even when they are not addressed to the merits those affirmative defenses that

require the presentation of evidence outside the pleadings (which includes the defense of failure

to exhaust as required by 42 U.S.C. § 1997e(a)) must be addressed under standards that apply the

procedural safeguards of Rule 56, so that disputed material factual issues and the credibility of

conflicting witnesses are resolved through live testimony and not on paper.[7]  Fed. R. Civ. P.

12(d) (where a party presents affidavits or other matters outside the pleadings in support of its

motion, the court must treat the motion "as one for summary judgment under Rule 56"), 56(b);

*Panero v. City of North Las Vegas*, 432 F.3d 949, 952 (9th Cir. 2005).[8]  The Court in *Jones* made

---

[7]  As discussed above, the reasoning in *Wyatt* for adhering to Rule 12(b) appears to have
been that frequently a motion for "summary judgment is on the merits," and a failure to exhaust
is independent of the substantive claims before the court.  *Wyatt*, 315 F.3d at 1119.  But, a
motion asserting an affirmative defense, even when it does not address the merits of the
substantive claims, must be brought under Rule 56 if the motion relies upon matters extrinsic to
the complaint to establish the factual predicate for the defense.  Motions challenging exhaustion
of administrative remedies frequently rely on declarations and exhibits that are extrinsic to the
complaint.

[8]  Several other Circuits have applied summary judgment principles when the defense of
failure to exhaust cannot be decided on the pleadings.  *See Brownell v. Krom*, 446 F.3d 305, 310
(2d Cir. 2006) (addressing exhaustion at summary judgment); *Williams v. Beard*, 482 F.3d 637,
639 (3d Cir. 2007) (reversing grant of summary judgment on exhaustion and remanding for
further proceedings); *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 379-80 (5th Cir. May 1, 2008)
(addressing exhaustion at summary judgment); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir.
2001) (reviewing evidence elicited at trial as to whether prisoner exhausted available remedies);
*Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (addressing exhaustion
at summary judgment); *but see Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) (finding that

clear that, "beyond the departures specified by the PLRA itself," nothing in the PLRA suggests that usual procedural practices should not be followed and noted that departures from the usual procedural requirements are to be expressly made by Congress.  *Jones*, 549 U.S. at 212, 214-16 Additionally, the Ninth Circuit recognized in *Wyatt* that when the district court looks beyond the pleadings to a factual record, which commonly occurs in deciding an exhaustion motion, the court must do so under "a procedure closely analogous to summary judgment."  *Wyatt*, 315 F.3d at 1119, n.14.

Thus, whether a motion asserting an affirmative defense such as failure to exhaust may be raised under Rule 12 or Rule 56 is not determined by whether the defense asserted in the motion goes to the "merits" of the claim.  Whether judgment is sought on the merits or whether the motion seeks to bar consideration of the merits based on a technical ground that precludes reaching the merits (i.e., exhaustion, claim or issue preclusion, a statute of limitations, etc.), the determining factor is whether the factual predicate for the motion is based on the text of the pleading or instead depends upon evidence submitted with the motion.  *See Jones*, 549 U.S. at 215 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.").

Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion.  Notwithstanding the analysis above, the court recognizes that under *Wyatt* the instant motion is to be presented as an "unenumerated" Rule 12(b) motion to dismiss.  However, the court analyzes the motion, as *Wyatt* suggests, under a standard "closely analogous to summary judgment."  315 F.3d at 119, n.15.  If, under that standard, the court concludes that the prisoner has failed to exhaust

---

PLRA exhaustion should be treated as a matter in abatement and should be decided on a Rule 12(b) motion, even when factual disputes exist); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (rejecting the summary judgment and the Rule 12(b) approaches to PLRA exhaustion and instead determining that once a PLRA exhaustion defense is raised, a special evidentiary hearing should be held to address that defense before litigation on the merits proceeds).

administrative remedies, the proper remedy is dismissal without prejudice.  *Id.* at 1119-20.

## 2. <u>Summary Judgment Standards</u>

Under Rule 56, resolution of the exhaustion issue in favor of defendants is appropriate when it is demonstrated that there is "no genuine issue as to any material fact" over the question.  Fed. R. Civ. P. 56(c).  The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to"'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986);  *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir.1995).

For the opposing party to establish a genuine issue of fact the factual dispute must meet two requirements.  First, the dispute must be over a fact(s) that is material, i.e. one that makes a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law, which here involves the question of whether plaintiff has met the exhaustion requirement.  *Id.* ("As to materiality, the substantive law will identify which facts are material.")

Second, the dispute must be genuine.  In this regard, the court must focus on which party bears the burden of proof on the factual dispute in question.  Where the opposing party bears the

1  burden of proof on the issue in dispute, conclusory allegations, unsupported by factual material,

2  are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

3  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate

4  specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*,

5  263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the record relied

6  on by the opposing party must be such that a fair-minded jury "could return a verdict for [him]

7  on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  If the

8  evidence presented could not support a judgment in that party's favor, there is no genuine issue.

9  *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

10  　　　　Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that

11  affects the outcome of the case.

12  　　　　On May 14, 2008, the court advised plaintiff of the requirements for opposing a motion

13  to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant

14  to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957

15  (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849

16  F.2d 409 (9th Cir. 1988).

17  　　　　　　　　　**3.  Exhaustion Under California Law**

18  　　　　California prisoners may appeal "any departmental decision, action, condition, or policy

19  which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit.

20  15, § 3084.1(a).

21  　　　　To initiate the process, an inmate must fill out a simple form, Dept. of Corrections,

22  Inmate/Parolee Appeal Form, CDC 602 (12/87) (hereinafter Form 602), that is made "readily

23  available to all inmates."  Cal. Code Regs. tit. 15, § 3084.1(c) (2004).  The inmate must fill out

24  two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled

25  "Action Requested."  Then, as explained on Form 602 itself, the prisoner "must first informally

26  seek relief through discussion with the appropriate staff member." [] The staff member fills in

9

part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.

If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. *See* Cal. Code Regs. tit. 15, §§ 3084.5(b)-(d). Although California labels this three-step process "formal" review (apparently to distinguish this process from the prior step), the three-step process is relatively simple. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." [] The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days-three weeks-of the action taken. *Id.*, § 3084.6(c). This level may be bypassed by the Appeals Coordinator in certain circumstances. *Id.*, § 3084.5(b). Within 15 work-days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.

If the prisoner receives an adverse determination at this first level, or if this level is bypassed, the inmate may proceed to the second level of review conducted by the warden. *Id.*, §§ 3084.5(c), (e)(1). The inmate does this by filling in part F of Form 602 and submitting the form within fifteen work-days of the prior decision. Within ten working days thereafter, the reviewer provides a decision on a letter that is attached to the form. If the prisoner's claim is again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. *Id.*, § 3084.5(e)(2). An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." *Id.*, § 3084.3(c)(6). *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal. Code Regs. tit. 15, § 3084.1(a). All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the

1   litigation will not save an action from dismissal.  *McKinney*, 311 F.3d at 1200.  The claim must

2   be properly exhausted; therefore, an untimely or otherwise procedurally defective administrative

3   grievance or appeal does not satisfy the exhaustion requirement.  *Woodford*, 548 U.S. at 83-84.

4   **III.   Analysis**

5       **A.  Cook and Plainer**

6       As noted, defendants Cook and Plainer contend that plaintiff failed to exhaust the

7   available administrative remedies.  They assert that plaintiff did not submit a grievance about

8   their alleged misconduct to the Director's Level of Review.  Defs.' Mot. to Dism., at 6-7.  In

9   response, plaintiff does not contest this fact.  Instead, he argues that submitting his appeal to the

10  First Formal Level exhausted the available remedies.  Pl.'s Opp'n, at 3-4.   He also seems to

11  argue that the process was unavailable.  *Id*.  For the reasons explained, the court rejects

12  plaintiff's arguments.

13      The court first considers whether there is a basis for finding that petitioner's appeal to the

14  first formal level of review exhausted the available administrative remedies.  The crux of the

15  problem here is plaintiff's failure to follow the rules of the CDCR with respect to using the

16  appeals process established for prisoners.  An important purpose of the exhaustion requirement is

17  to resolve claims without the need to involve the federal courts.  *Woodford v. Ngo*, 548 U.S. 81,

18  89 (2006).   Thus, as noted above, in order to satisfy the exhaustion requirement, a prisoner must

19  properly pursue the remedies available to him.  *Woodford*, 548 U.S. at 90.  "Proper exhaustion

20  demands compliance with an agency's deadlines and other critical procedural rules because no

21  adjudicative system can function effectively without imposing some orderly structure on the

22  course of its proceedings."  *Id.*, at 90-91.  Here, California's rules "define the boundaries of

23  proper exhaustion."  *See Jones v. Bock*, 549 U.S. 199, 218 (2007).   Under those rules, "a face-

24  to-face interview with the inmate or parolee shall be conducted at the first level of review," or if

25  that level is bypassed, an "interview shall be conducted at the second level of review . . . ."

26  DOM § 54100.14.  A prisoner who refuses to be interviewed is deemed to have abused the

1   appeals process, and risks cancellation or rejection of the appeal.  Cal. Code Regs. tit. 15, §

2   3084.4(d);  DOM § 54100.7.  It is clear from the record that plaintiff submitted a grievance about

3   Cook and Plainer, and that it was accepted for review on the First Formal Level.  Defendants'

4   evidence shows that Sergeant Audette attempted to interview plaintiff about the incident on two

5   different occasions.  Audette Decl., ¶¶ 3, 4; Dangler Decl., at 2.  Plaintiff contests this fact.

6   However, in support of his position he submits only the appeal in which he accuses Sergeant

7   Audette of lying.  Plaintiff has not submitted any declarations of fellow prisoners who observed

8   him at various times throughout the day in support of this assertion.  He submits no declarations

9   or other evidence suggesting that Sergeant Audette had no opportunity to interview plaintiff or

10  that plaintiff was so engaged in activities those days that Sergeant Audette could not have

11  attempted to interview him.  Thus, under an analytical framework "closely analogous to

12  summary judgment"[9] plaintiff cannot establish a genuine dispute over whether he properly

13  utilized the appeals system.  The unrefuted evidence shows that Audette attempted to interview

14  plaintiff pursuant to prison rules.  Plaintiff, however, refused to comply with this rule.  He

15  therefore did not allow prison officials the opportunity to resolve the dispute without resort to

16  federal court.  Accordingly, petitioner's violation of the rules renders his claims unexhausted.

17          In opposing defendants' motion, plaintiff also seems to argue that the exhaustion

18  requirement was satisfied "when prison officials responded to his second level appeal with a

19  rejection stamp."  Pl.'s Opp'n, at 2.  Thus, he appears to argue that the cancellation of his appeal

20  made further administrative remedies unavailable because there was no level of review to which

21  he could appeal.  As noted above, exhaustion is mandatory.  This requirement is mandatory and

22  unequivocal.  *Booth v. Churner*, 532 U.S. 731, 741.  Furthermore, administrative remedies are

23  available when some form of redress may be obtained through an established procedure.  *Id.* at

24  738-39.  However, a prisoner need not continue attempting to obtain redress where none can be

25

26          [9]  *Wyatt*, 315 F.3d at 1119, n.14

obtained through an agency's procedures.  *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).  One way of determining whether redress might be had is by reference to statements of prison administrators entertaining the appeal.  *See Id.*, 422 F.3d at 935 (prisoner not required to seek further redress "once he has been reliably informed by an administrator that no remedies are available.").  As noted above, prison administrators cancelled plaintiff's appeal because he refused to cooperate.  Despite this cancellation, plaintiff was informed on the first formal level of review that an inquiry into his allegations had been conducted, but the results would not be disclosed to him.  Furthermore, he was informed in writing that if he wanted to appeal, he could submit his grievance "through all levels of appeal review up to, and including, the Director's Level of Review," whereupon the administrative remedies would be deemed exhausted.  Am. Compl., Ex. A, at 4.  Defendants Cook and Plainer have submitted uncontested evidence that plaintiff did not pursue his grievance about their alleged misconduct of Cook or of Plainer to the Director's Level of Review.  Plaintiff argues that after receiving notice that he could appeal through the Director's Level of Review, he made a written inquiry of whether his administrative remedies were exhausted despite the cancellation, and he received an unhelpful answer, i.e., "it depends."  Pl.'s Opp'n, at 2-3.  Based on this notice, he believed he could not file another appeal. But other officials *did* give him a definitive answer, explaining that to exhaust, he must appeal through the Director's Level of Review.  Nothing in the rejection of the second level appeal suggested that this requirement had changed.  Plaintiff could have appealed to the Director's Level of Appeal.  Thus, administrative remedies remained available to him, and he did not exhaust the available administrative remedies as required by 42 U.S.C. § 1997e(a).  Accordingly, Cook and Plainer's motion to dismiss must be granted.

////

////

////

////

**B.  Wong**

Defendant Wong also contends that plaintiff failed to exhaust the available administrative remedies with respect to the claims against him.  Defs.' Mot. to Dism., at 7.  Plaintiff does not address this contention.[10]  Pl's Opp'n, at 2-5.  It is clear from the standards outlined above that a prisoner must follow all rules with respect to administrative appeals in order to satisfy the exhaustion requirement.  *See Woodford*, 548 U.S. 81, at 90-91.  "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  The CDCR's regulations require only that a prisoner must "describe the problem" about which he grieves.  Cal. Code Regs. tit. 15, § 3084.3084.2(a).  The applicable CDCR regulation does not require prisoners to identify prison officials by name.  *See* Cal. Code Regs. tit. 15, § 3084.1(c) (2004) (requiring that a grievance "describe the problem").   Here, the evidence shows that plaintiff filed a grievance complaining that Cook urinated on plaintiff's mattress and Plainer refused to provide a new one.  He did not mention Wong by name in this appeal, and as noted plaintiff was not required to do so.  However, plaintiff did not refer, even generally, to a supervisor who could have prevented this conduct.  Defendant has submitted declarations from officials of the California Department of Corrections and Rehabilitations stating that they have searched the appropriate databases and found that plaintiff has not filed any grievance complaining that Wong could have prevented this conduct.  Plaintiff has not submitted any evidence contesting these assertions.  There is no factual basis for a finding that plaintiff filed an administrative appeal notifying prison officials that Wong had any part at all in the incident involving Cook and Plainer. Based on this evidence.  Plaintiff fails to establish a genuine factual dispute over whether he filed an appeal over Wong's alleged involvement in the

---

[10]  As explained above, Wong also moves to dismiss on the ground that plaintiff's claim of liability based on Wong's supervisory position fails to state a claim for relief.  While plaintiff does not address Wong's argument that he failed to exhaust, he does address Wong's argument that he fails to state a claim.  Pl.'s Opp'n, at 3.

1 misconduct of Plainer and Cook.  Therefore, he failed to exhaust the available administrative

2 remedies and defendant Wong's motion must be granted.

3       As this ground for relief is sufficient to resolve Wong's motion, the court does not

4 address Wong's contention that this case must be dismissed for plaintiff's failure to state a claim.

5 **C. Official Capacity Claims**

6       Defendant Huston moves to dismiss plaintiff's demand for damages in his official

7 capacities.[11]  Defs.' Mot. to Dism., at 8.  He argues that he is a "person" for purposes of this

8 action.  Plaintiff asserts that he has no legal training and intended only to demand injunctive

9 relief from defendants in their official capacities.  Pl.'s Opp'n, at 5.  In the complaint, plaintiff

10 alleges that "each defendant is being sued individually and in his/her official capacity."  Am.

11 Compl., at 4.  In the demand for relief, he seeks damages and "any other and further relief the

12 court deems fair and proper." *Id.* at 7.  Here, plaintiff seeks relief pursuant to 42 U.S.C. 1983.

13 *Id.* at 1.  Section 1983 provides for a cause of action against "any person" acting under color of

14 law to deprive an individual of any "rights, privileges, or immunities secured by the Constitution

15 or laws" of the United States.  42 U.S.C. § 1983.  Nowhere does it provide for suit against a state

16 or a state agency and the Supreme Court has held that neither states nor their agencies are

17 persons under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

18       However, a suit for damages against a state officer in his official capacity is a suit against

19 the state. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Brandon v. Holt*, 469 U.S.

20 464, 471-472 (1985) (in official capacity suit, defendant's actions are equated with those of the

21 entity).  A reasonable construction of the complaint is that plaintiff seeks damages from Huston

22 in his official capacity and, if the court deems it proper, injunctive relief as well.  Huston is an

23 employee of the California Department of Corrections and Rehabilitation, which is a

24

25     [11]  The court has found that this action must be dismissed against Plainer, Cook and
26 Wong.  Accordingly, the court considers this ground for dismissal only with respect to plaintiff's
claim against defendant Houston.

1   governmental department within the State of California.  *See* Cal. Penal Code §§ 5000.  As such,

2   when he acts within the scope of his employment, he is a person who acts under color of state

3   law, and is subject to suit under § 1983.  Therefore, plaintiff cannot seek damages against him in

4   his official capacity in a suit brought pursuant to § 1983.  However, individuals are subject to

5   injunctive relief.  Accordingly, insofar as plaintiff seeks damages against Huston in his official

6   capacity, the damages claim must be dismissed.  Plaintiff is limited to seeking injunctive relief

7   against Huston on this claim.

8   **IV.   Conclusion**

9          For the reasons explained above, plaintiff failed to exhaust the available administrative

10  remedies with respect to his claims against Plainer, Cook and Wong.  Furthermore, plaintiff

11  cannot obtain damages from Huston in his official capacity.  The motion to dismiss for failure to

12  exhaust must be granted, and the motion to dismiss plaintiff's claim for damages against Huston

13  must be granted.

14         Accordingly, it hereby is RECOMMENDED that:

15         1.  The November 7, 2008, motion to dismiss on the ground that plaintiff failed to

16  exhaust the available administrative remedies with respect to his claims against Plainer, Cook

17  and Wong be granted;

18         2.  Plaintiff's claims against Plainer, Cook and Wong be dismissed without prejudice;

19         3.  Plaintiff's claims against Huston in his official capacity be dismissed; and,

20         4.  Defendant Huston be directed to file an answer to the complaint within 30 days after

21  any order adopting this recommendation.

22         These findings and recommendations are submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 15 days after

24  being served with these findings and recommendations, any party may file written objections

25  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

26  to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

1   specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

2   F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3   Dated:  September 17, 2009.

4

5                            EDMUND F. BRENNAN
                            UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26